United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARNOLD CHEW,

            Plaintiff,

     v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

            Defendants.

Case No.   13-cv-05286-MEJ

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 54

**INTRODUCTION**

In this employment discrimination case brought by Plaintiff Arnold Chew ("Chew"), Defendant City and County of San Francisco (the "City") has filed a Motion for Summary Judgment. Dkt. No. 54. The Court finds this Motion suitable for disposition without oral argument and **VACATES** the February 25, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the City's Motion for the following reasons.

**REQUESTS FOR JUDICIAL NOTICE**

Both parties have filed Requests for Judicial Notice pursuant to Federal Rule of Evidence 201. Under Rule 201, the Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The City requests the Court take judicial notice of the City's Charter Sections 1.101 (Rights and Powers), 4.100 (General), 4.126 (Departments – General Provisions), 4.129 (Department of Administrative Services), 4.132 (Executive Branch Reorganization), 10.101 (General Powers and Duties); the City's Administrative Code section 2A.30 (Department Heads);

and Civil Service Rules, Volume I, Miscellaneous Classes, Rules 101, 103, 122, et seq.  Dkt. No. 55.  The Court may take judicial notice of matters of public record, including official municipal enactments, ordinances and statutes.  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Molex v. City & Cty. of S.F.*, 2012 WL 3042256, at *1 (N.D. Cal. July 25, 2012), *aff'd*, 586 F. App'x 292 (9th Cir. 2014).  Accordingly, the City's Request is GRANTED.

Chew requests the Court take judicial notice of the August 5, 2014 Decision and Award issued by an arbitrator in *In the Matter of a Controversy between the City and County of San Francisco Laguna Honda Hospital/DPH: And RE: Termination of Greg Bosnak*, ERD #82-13-2689 SEIU 1021.  Dkt. No. 72-12.  As this decision is available to the public and its accuracy cannot be reasonably disputed, the Court finds it appropriate to take notice of this prior decision and therefore GRANTS Chew's Request.  *See Chandler v. State Bar of Cal.*, 2008 WL 901865, at *1 (N.D. Cal. Mar. 31, 2008) (taking judicial notice of arbitration award).  However, "[w]hile 'a court may take judicial notice of the existence of matters of public record, such as a prior order or decision,' it should not take notice of 'the truth of the facts cited therein.'"  *Bennett-Wofford v. Bayview Loan Serv., LLC*, 2015 WL 8527333, at *4 (N.D. Cal. Dec. 11, 2015) (quoting *Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006)); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a case then before it").  Thus, for purposes of this Order, the Court takes judicial notice of the August 5, 2014 Decision and Award, but only for its existence and not for the truth of the facts cited therein.

**EVIDENTIARY OBJECTIONS**

In addition to his Opposition, Chew also filed Objections to Exhibits and a Motion to Strike Defendants' Motion for Summary Judgment.  Objections, Dkt. No. 72-16.  Chew argues that various copies of his Performance Evaluations, which are exhibits to the Declaration filed by Chris Lai in Support of Defendants' Motion for Summary Judgment (Dkt. Nos. 59-61), are hearsay in that they are out of court statements that are being offered for the truth of the matter

2

1    stated therein.  Objections at 2.  However, these Performance Appraisals fall within the "Business

2    Records" exception to the hearsay rule in that they were records kept in the regular course of

3    business and are offered by a person with knowledge of those records.  *See* Fed. R. Evid. 803(6);

4    Lai Decl. ¶¶ 1, 11-13, 16-21.  These same Performance Evaluations are attached to the Declaration

5    of Willie Ramirez in Support of Defendants' Motion for Summary Judgment (Dkt. No. 62) and are

6    exceptions to the hearsay rule for the same reasons.  *See* Fed. R. Evid. 803(6); Ramirez Decl. ¶¶ 1,

7    2, 4-14.

8            Chew also alleges that the exhibits attached to the Declaration of Jamilah Din in Support of

9    Defendants' Motion for Summary (Dkt. No. 64) should be considered hearsay because Din cannot

10   authenticate the documents as she was not the person who prepared them, nor was she the

11   recipient of the documents.  Objections at 3-4.  However, Din has asserted that she received each

12   of these complaints from subordinates of Chew who she represented in her capacity as Shop

13   Steward for the Union representing Chew's subordinates.  Din Decl. ¶¶ 4-5.  The City offers these

14   exhibits not to prove the truth of the matters asserted therein, but to establish that they had

15   legitimate, nondiscriminatory business reasons for any disciplinary action.  Therefore, these

16   documents do not fall within the definition of hearsay.  *See* Fed. R. Evid. 801(c).

17                                    **BACKGROUND**

18   **A.      Employee Structure at Laguna Honda Hospital**

19           Chew has been employed at Laguna Honda Hospital ("LHH") as a Food Service

20   Supervisor since 1998.  Compl. ¶ 3, Dkt. No. 1; Chew Decl. ¶ 3, Dkt. No. 72-3.  He is of Asian

21   descent.  Chew Decl. ¶ 85.  LHH is a City-owned skilled nursing and rehabilitation facility serving

22   seniors and adults with disabilities, which caters toward long term care for its residents.  Ramirez

23   Decl. ¶ 3.  As a Food Service Supervisor, Chew is responsible for supervising the serving of

24   meals, storage of food, collection and washing of dishes, quality assurance and sanitation of the

25   meals being served, and for supervising the Food Service Workers who work in production and

26   service of the meals.  *Id.* ¶ 4; Lai Decl. ¶ 5.  Chew's primary responsibility as a Food Service

27   Supervisor is supervising the tray line, where Food Service Workers use an assembly-line type of

28   apparatus to create the meals for the day, which are then sent from the kitchen to the various wards

United States District Court
Northern District of California

3

of the Hospital.  Ramirez Decl. ¶ 5; Lai Decl. ¶ 6.  Chew completed his probationary period in 2000.  Chew Decl. ¶ 4.

In addition to Chew, there is one other Food Service Supervisor, Rhonda Williams, and one Senior Food Service Supervisor, Raymond Dutton.  Super Decl., Ex. D ("Williams Dep.") 15:19-16:4, Dkt. No. 57-5; *Id.*, Ex. F ("Dutton Dep..") 22:1-28:1, Dkt. No. 58-1.  Chew, Williams, and Dutton are all supervised by Food Service Manager, Chris Lai, who was in turn supervised by Assistant Administrator of the Hospital for Nutrition Services and Material Management, Steve Koneffklatt, until Koneffklatt's retirement in June of 2013.  *Id.*, Ex. G ("Koneffklatt Dep.") 10:19-12:9, Dkt. No. 58-2; *Id.*, Ex. C ("Lai Dep.") 23:1-24:5, 29:3-30:9, 90:23-91:24, Dkt. No. 57-4; Chew Decl. ¶¶ 81-82.  Lai has supervised Chew since Chew first started at the Hospital.  Lai Dep. 47:24-48:5.

**B.  Chew's Disciplinary History**

Chew's employment record shows he was having difficulties in certain aspects of the supervisory aspect of his job, in particular with regard to scheduling and communication with his subordinates, dating back to 2000.  Ramirez Decl. ¶ 5, Ex. A; Lai Decl. ¶ 11, Ex. A.  With regard to scheduling, Chew is responsible for replacing people who call in sick, request time off, or need to be reassigned to production.  Lai Decl. ¶ 7.  Chew regularly scheduled people who were not needed (resulting in unnecessary overtime costs to LHH), scheduled people without first checking if they were available or even notifying them, or scheduled people in an unstructured way, i.e. several people for the same position while leaving others vacant.  *Id.* ¶ 9; Williams Dep. 42:20-44:21, 72:9-74:8; Dutton Dep. 74:2-75:24; Din Decl. ¶¶ 4, 5, Ex. A, Dkt. No. 64; Wong Decl. ¶ 5, Dkt. No. 67.  With regard to communication with the staff he supervised, Chew's supervisors and his performance evaluations indicate he sometimes acted unprofessionally toward them, caused or escalated conflicts, failed to provide them with necessary information about the job (including scheduling information), or failed to address issues brought to his attention.  Lai Decl. ¶ 10; Din Decl. ¶¶ 4, 5, Ex. A; Wong Decl. ¶ 4; Ramirez Decl. ¶ 15, Ex. I; Williams Dep. 42:19-43:24.

Chew's supervisors issued a Performance Appraisal Report of Chew for the year 1999 to 2000 that denoted "Development Needed" with regard to the fact that he failed to "communicate

4

clearly resulting in misunderstanding and/or confusion," demonstrated poor "attention to planning and/or inefficient use of resources," and failed to provide "needed training or job information to employees."  Ramirez Decl. ¶ 5, Ex. A at CCSF 000151; Lai Decl. ¶ 11, Ex. A at CCSF 000151. Lai noted in the written comments section that Chew's performance was "inconsistent" and stated that Chew needed to "conduct staff-meetings on an on-going basis to improve communications," "continue to improve [his] communication skills and keep upper management informed of incidents on [his] shift," and to make sure to "inform staff of their schedule" and "ensure that time off requests [are] responded to in a timely manner."  Ramirez Decl. ¶ 5, Ex. A at CCSF 000153; Lai Decl. ¶ 11, Ex. A at CCSF 000153.  In the goals section of the Appraisal, Lai again noted that Chew needed to "[i]mprove communication skills with the staff. This includes setting up the schedule and tell the employee that he/she is scheduled, documenting call ins, respond in a more timely manner on employees' request for time off, follow up on employee issues in a more timely manner."  Ramirez Decl. ¶ 5, Ex. A at CCSF 000154; Lai Decl. ¶ 11, Ex. A at CCSF 000154.  Lai also mandated that Chew attempt to have a better working relationship with his team leader and "continue to improve on communication skills through email messages, written notes, and verbal communication."  *Id.* (both).  Lai further noted that Chew needed to be more active in supervising the tray line, stating he should "Supervise Trayservice more. . . .  You need to show an even balance so that it does not appear that you are at your desk all the time."  *Id.* (both).

At the end of his probationary period, Chew received another performance appraisal, stating he was able to pass probation and showed some improvement but repeating the same concerns as his previous appraisal regarding lack of consistency in his performance, improving communication and treating staff in a more professional manner, and scheduling the staff he supervised.  Ramirez Decl. ¶ 6, Ex. B at CCSF 00163-00164; Lai Decl. ¶ 12, Ex. B at CCSF 00163-00164.  Lai also noted Chew needed to be more actively present on the tray line, since supervising that process is an integral part of the job.  *Id.* (both).

At Chew's Management Performance Report in 2005, Lai again noted Chew was having trouble with scheduling, giving him a stated objective to "effectively and efficiently schedule the required number of staff each day" and "reduce the number of overtime hours being used."

Ramirez Decl. ¶ 7, Ex. C at CCSF 000139; Lai Decl. ¶ 13, Ex. C at CCSF 000139.  Lai also again noted Chew's problems with communication, giving him an objective to "[c]oach, train, and proper[ly] utilize your human resources effectively and efficiently."  Ramirez Decl. ¶ 7, Ex. C at CCSF 000140; Lai Decl. ¶ 13, Ex. C at CCSF 000140.  Lai gave Chew an objective of being present on the tray-line more consistently in order to better supervise the process.  Ramirez Decl. ¶ 7, Ex. C at CCSF 000139; Lai Decl. ¶ 13, Ex. C at CCSF 000139.

At the Progress Report Meeting to check on these objectives several months later, Lai noted Chew still needed improvement in scheduling, including the fact that he was continuing to overstaff the tray line, misinforming employees regarding the schedule, or failing to inform them at all that they were scheduled to work.  Ramirez Decl. ¶ 9, Ex. D at CCSF 000143; Lai Decl. ¶ 15, Ex. D at CCSF 000143.  Lai also noted continued problems with Chew's communication and his lack of presence on the tray line in this progress report.  Ramirez Decl. ¶ 9, Ex. D at CCSF 000143-44; Lai Decl. ¶ 15, Ex. D at CCSF 000143-44.

Chew's performance appraisal reports for the periods of 2009-10, 2010-11, and 2011-12 continued to reflect the same performance issues.  Ramirez Decl. ¶¶ 10, 12-13, Ex. E, F, G; Lai Decl. ¶¶ 17, 19-20, Ex. E, F, G.  Lai also regularly received complaints from Chew's subordinates about his errors with scheduling, his poor communication style, and his lack of supervision on the tray line, among other things.  Williams Dep. 42:20-44:21, 72:9-74:8; Ramirez Decl. ¶ 15, Ex. I; Din Decl. ¶¶ 4-5, Ex. A.; Wong Decl. ¶ 4.

In October of 2012, Lai placed Chew on a Developmental Plan, which is a process in which an employee's progress in areas needing improvement is more closely monitored.  Lai Dep. 95:12-96:12, Ex. D.  Chew's main areas needing improvement—accuracy in scheduling, improving communication with staff, and increasing his presence on the tray line—were highlighted in the Development Plan.  *Id.*  Over the next few months, Lai monitored Chew's progress with regard to his Development Plan and wrote Chew letters documenting what he observed on November 15, 2012 and February 22, 2013.  *Id.* 106:4-111:1, 117:5-23 and Ex. H.  Lai's February 22 letter documented ways in which Chew had failed to improve his performance and stated that he would be recommending Chew be disciplined for failing to achieve the goals of his Development Plan.

United States District Court
Northern District of California

*Id.* 117:5-23 and Ex. H.  On April 11, 2013, Chew was suspended for five days for failing to meet those goals.  *Id.* 121:18-122:25 and Ex. I.

Other than Chew's April 2013 suspension, he has been disciplined three other times.  On March 3, 2009, Chew was issued a written warning for violating infection and quality control standards at the Hospital, in direct violation of what he had been instructed to do.  Koneffklatt Dep. 51:1-54:25 and Ex. F.  On May 10, 2009, Chew was issued a written warning for Unprofessional and Discourteous Communication for yelling at and being disrespectful toward one of his subordinates.  Lai Dep. 126:5-131:16 and Ex. J.  Finally, on August 5, 2013, Chew was suspended for eight days for failing to report a substandard item found twice in the resident meals, dishonesty regarding his failure to report the item, and for pressuring a subordinate to make a statement on his behalf regarding the discipline.  Super Decl., Ex. A ("Chew Dep.") 84:7-87:5 and Exs. 5-6, Dkt. No. 57-1.

## C.    Chew's Complaints of Discrimination

Chew alleges he was discriminated against based on his association with a chef at LHH, Leonard Lee Collins, Jr., who is African American.  Compl. ¶¶ 23-53, 68-76, 87-93.  Collins began working at LHH on July 10, 2010.  Ramirez Decl. ¶ 18.  When he started working at LHH, a number of people helped Collins with basic tasks on the computer, including Chew.  Super Decl., Ex. B ("Collins Dep.") 13:14-14:19, 20:4-16, 25:4-13, Dkt. No. 57-3.  Chew took it on himself to try to assist Collins to work through the problems he was having with the computer system during his lunch and break periods.  Chew Decl. ¶¶ 11, 40-42, 63.  In October of 2011, Koneffklatt told Chew he should not spend his time helping Collins on the computer.  Chew Dep. 36:8-37:13, 41:5-16; Koneffklatt Dep. 30:25-31:10.  Koneffklatt testified he told Chew this "[b]ecause he was not fulfilling other parts of his job.  He should have been spending his time supervising his staff on the tray line."  Koneffklatt Dep. 31:11-18.

The conduct Chew feels was discriminatory based on his relationship with Collins is:

- In September of 2011, Koneffklatt changed Chew's schedule and would not agree to change it back in a way that would accommodate his needs regarding child care.  Chew Dep. 35:10-36:7, 37:14-39:18, 65:4-66:2.

7

- On October 21, 2011, Koneffklatt instructed Chew to stop helping Collins write emails and stop being at Collins' computer. *Id.* 36:8-37:13, 41:5-42:23 and Ex. 2.

- Also in October of 2012, Lai at first denied Chew's vacation request, saying he never received it, but then subsequently approved it. *Id.* 46:2-52:14, 69:9-70:8, 71:11-72:7, Ex. 3.

- Chew thinks senior supervisor Dutton attempted to change the requirements of his Family and Medical Leave Act ("FMLA") status because he scheduled a meeting with him, but the meeting never happened. *Id.* 70:9-71:10, 72:8-74:25.

- Koneffklatt talked to him "in a very harsh, angry manner" on August 16, 2012. *Id.* 60:14-61:16, 75:1-80:18.

- On August 30, 2012, Koneffklatt "stalked" Chew by staring at him in a hateful way and tried to discipline him. *Id.* 61:17-24, 80:19-82:8.

- In February of 2013, Lai spoke to Chew using inappropriate and embarrassing comments. *Id.* 61:25-62:18, 82:9-84:2.

- Lai put Chew on a Development Plan in October 2012. *Id.* 84:3-7, 92:22-96:20.

- Chew's April 2013 suspension. *Id.* 84:7-92:20.

- The negative performance appraisals Chew received from Lai. *Id.* 143:14-147:25.

**D.  Chew's Complaints of Retaliation**

Chew claims the following conduct was retaliatory:

- His schedule not being changed in September of 2011 was retaliation for helping Collins with his emails and for filing an internal violence in the workplace complaint about Koneffklatt. *Id.* 97:3-16, 102:9-12, 104:16-107:10 and Ex. 4.

- He received a written policy instructing him not to go into the chef's office. *Id.* 97:16-24, 115:1-116:9.

- When Chew had a medical issue at work, no one filled out a Workers Compensation form for him, so he had to do it himself. *Id.* 97:25-99:9, 116:14-117:18.

- On another occasion, he got an electric shock and no one filled out a Workers Compensation form for him, so he had to do it himself. *Id.* 99:10-100:17, 117:19-122:17.

- On August 16, 2012, Koneffklatt yelled at Chew and gave him a write up. *Id.* 107:13-111:16.

8

- • Lai put Chew on a Development Plan in October of 2012, which was retaliation for helping Collins with his email and for making an internal complaint against Koneffklatt. *Id.* 101:10-102:8, 123:1-125:7 and Ex. 7.

- • Koneffklatt yelled at Chew when he asked to go home early because of an emergency call from his wife. *Id.* 101:4-9, 102:9-22, 125:8-23.

- • Chew's suspensions. *Id.* 90:22-91:25, 102:23-103:7, 136:11-142:7.

- • Ray Dutton attempting to change Chew's FMLA status requirements. *Id.* 103:8-104:11, 142:8-143:13.

**E.      Procedural Background**

Chew originally filed a Department of Fair Employment and Housing ("DFEH") charge on or about January 16, 2013, alleging discrimination, harassment, and retaliation based on "other." Super Decl. ¶ 11, Ex. J at 000032-000037.  He later withdrew that charge on or around February 8, 2013, because he received a letter from DFEH stating that he made an error and needed to re-file the information. *Id.* ¶ 11, Ex. J at 000024-000031; Chew Decl. ¶¶ 21-31.  He states he "was sent a form entitled 'Request To Withdraw' the import of which he did not understand, but he signed it in any case." Chew Decl. ¶¶ 30-31.  Chew received a right to sue letter from DFEH for that charge dated February 13, 2013. *Id.* ¶ 36.

Chew re-filed his DFEH charge on or about April 22, 2013, which he also cross-filed with the EEOC, alleging discrimination, harassment, and retaliation based on his age and disability. Super Decl. ¶ 11, Ex. J at 00001-00006.  He received right to sue letters from DFEH and EEOC for this charge.  Chew Decl. ¶¶ 34, 38.

On November 14, 2013, Chew filed the present Complaint, alleging six claims: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, et seq.; (2) associational discrimination in violation of Title VII and 42 U.S.C. § 1981; (3) retaliation in violation of 42 U.S.C. § 1981; (4) retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(h); (5) associational discrimination in violation of FEHA, Cal. Gov't Code § 12940(a); and (6) failure to prevent discrimination in violation of FEHA, Cal. Gov't Code § 12940(k).

The City filed the present Motion on September 30, 2015.

United States District Court
Northern District of California

9

United States District Court
Northern District of California

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# DISCUSSION

## A.   Title VII and FEHA Claims

In its Motion, the City raises three arguments regarding Chew's Title VII and FEHA claims: (1) Chew failed to exhaust his administrative remedies under Title VII and FEHA, and therefore his claims for associational discrimination and failure to prevent discrimination must fail; (2) Chew's associational discrimination claims fail as a matter of law because (a) the conduct he identifies does not constitute a cognizable adverse employment action(s), (b) he cannot show he was performing competently in the position he held, and (c) he cannot show a causal link between his association with Collins and the adverse employment actions; and (3) Chew fails to present evidence to support a prima facie claim of retaliation. Mot. at 8-18. The Court finds the City's exhaustion argument dispositive.

A claimant must exhaust his or her administrative remedies before filing a discrimination or retaliation case in federal court. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001). To properly exhaust these claims, a claimant must first file the charge with either the EEOC (enforcing Title VII) or the DFEH (enforcing FEHA). When Title VII and FEHA claims overlap, the EEOC and DFEH are each the agent of the other for purposes of receiving charges, and thus a filing with one agency is considered to be constructively filed with the other. *See EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000); *Paige v. State of Cal.*, 102 F.3d 1035, 1041 (9th Cir. 1996) ("[T]he filing of a charge with one agency is deemed to be a filing with both.").

Before bringing suit under Title VII, a plaintiff must exhaust administrative remedies by filing "a charge with the EEOC within 180 days of the alleged unlawful employment practice, or . . . if . . . the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)). If the EEOC does not bring suit, it must notify the person through a right to sue letter. 42 U.S.C. § 2000e-5(f)(1). After receiving a right to sue letter, a plaintiff has ninety days to file suit. *Id.*

As to FEHA, a plaintiff must file a written charge of discrimination with the DFEH within

1   one year of the alleged violation and obtain a notice of the right to sue from the DFEH.

2   *Rodriguez*, 265 F.3d at 896; Cal. Gov't Code § 12960(d).  Upon receiving a right to sue letter, a

3   plaintiff has one year to file his or her FEHA claim in a judicial forum.  Cal. Gov't Code §

4   12965(b).

5          As noted above, Chew's original January 16, 2013 DFEH charge alleged discrimination,

6   harassment, and retaliation based on "other."  Super Decl. ¶ 11, Ex. J at 000032-000037.  He later

7   withdrew that charge on or around February 8, 2013, *id.* at 000024-000031, but he states he

8   received a right to sue letter from DFEH dated February 13, 2013.  Chew Decl. ¶ 36.  Chew filed

9   his second DFEH charge on or about April 22, 2013, which was cross-filed with the EEOC,

10  alleging discrimination, harassment, and retaliation based on his age and disability.  Super Decl. ¶

11  11, Ex. J at 00001-00006.  He also received a right to sue letter for this charge, dated August 16,

12  2013.  Chew Decl. ¶¶ 34, 38.

13         As Chew filed the present Complaint on November 14, 2013, his claims could be timely.

14  However, neither the EEOC or DFEH charge alleges discrimination based on race, associational

15  discrimination, or failure to prevent discrimination.  The scope of a civil action alleging

16  discrimination is limited by the charge filed with the EEOC and DFEH.  *Freeman v. Oakland*

17  *Unified Sch. Dist.*, 291 F.3d 632, 636-38 (9th Cir. 2002).  "Incidents of discrimination not

18  included in an EEOC charge may not be considered by a federal court unless the new claims are

19  like or reasonably related to the allegations contained in the EEOC charge."  *Green v. L.A. Cty.*

20  *Superintendent*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (citations omitted).  In determining

21  whether the allegations in a civil action are "like or reasonably related" to an administrative charge

22  of discrimination, the court must determine whether the original investigation would have

23  encompassed the new charges in the civil action.  *Id.* (citations omitted).  "In determining whether

24  the exhaustion requirement has been satisfied, it is appropriate to consider such factors as the

25  alleged basis of the discrimination, dates of discriminatory acts specified within the charge,

26  perpetrators of discrimination named in the charge, and any locations at which discrimination is

27  alleged to have occurred.  The crucial element of a charge of discrimination is the factual

28  statement contained therein."  *Freeman*, 291 F.3d at 636 (internal quotations and citation omitted).

United States District Court
Northern District of California

1    Nowhere in his DFEH/EEOC charges did Chew allege discrimination based on his race or

2  association with another employee based on their race.  In fact, he does not mention Mr. Collins,

3  Collins' race, or Chew's own race.  Nor does he allege failure to prevent discrimination.  In

4  comparison, the focus of Chew's present Complaint is Mr. Collins.  Chew states Collins is

5  African-American, they became friends after Collins was transferred to LHH, he offered to help

6  Collins with the e-mail and computer system, and alleges that his supervisors confronted him

7  about providing such help and ordered him to stop.  Compl. ¶¶ 23-25, 31, 35-36.  Based on his

8  actions, Chew alleges the City retaliated by changing his schedule, initiating an "investigation of

9  his professional activities," and he was "written up, investigated and counseled on numerous

10  occasions, culminating in his being put on a six month (6) performance/development plan by Chris

11  Lai," and not permitted to pick up his wife when he learned she was ill.  *Id.* ¶¶ 41, 45-46, 49.  In

12  comparison, in his DFEH/EEOC charges, Chew focuses on allegations that the City "[d]id not rest

13  proper due process when I was injured," and he "[h]ad to complete and submit my own injury

14  form weeks after occurrence. Created financial hardship to my [sic] and my family."  Super Decl.

15  ¶ 11, Ex. J at 000033.  Although Chew uses words such as "discrimination" and "retaliation," his

16  allegations focus on being "[d]enied family care or medical leave, Denied reasonable

17  accommodation, Other."  *Id.*  He states he has dealt "with a lot of stress from work that I had a

18  heart attack back on March 13th, 2012."  *Id.*

19    Even construing Chew's charges liberally, the Court finds the factual statements contained

20  therein do not relate to the discrimination allegations in his Complaint.  Nothing in the language of

21  Chew's DFEH/EEOC charge would have resulted in an EEOC investigation encompassing alleged

22  discrimination based on his race or association with another employee based on their race.  These

23  allegations, which surfaced for the first time in Chew's present Complaint, would not have been

24  necessary to, or addressed in, the scope of an investigation into his claims regarding family care,

25  medical leave, and reasonable accommodations.

26    This finding is supported by the Ninth Circuit's decision in *Freeman*.  In that case,

27  Freeman's charge began by stating: "Racial and sexual discriminatory practices among the

28  teaching staff, continue to persist."  *Freeman*, 291 F.3d at 634 n.1.  This charge "addressed only

13

United States District Court
Northern District of California

discrimination in the context of an election for the Faculty Advisory Council . . . , an annual election among school faculty to select representatives on matters relating to the operation of the school." *Id.* at 634. At the conclusion of his charge, Freeman requested the EEOC "file suit for racial and sexual discrimination on [his] behalf." *Id.* However, "the allegations in [plaintiff's subsequent] complaint related exclusively to class size and student contacts at Calvin Simmons and the manner in which the defendants handled the dispute over the switch to an eight period school day." *Id.* at 635. While Freeman's charge and his subsequent complaint both related to claims of racial and sexual discrimination, the court held "that the allegations in Freeman's EEOC charge were not like or reasonably related to those in the First Amended Complaint so as to sufficiently exhaust Freeman's administrative remedies. . . . A reasonable EEOC investigation of that charge would not have focused on anything beyond Freeman's participation in the . . . election process at Calvin Simmons." *Id.* at 637; *cf. EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (finding district court properly exercised jurisdiction over claims not specifically alleged in complaint and stating that "[n]ot only did the EEOC charge provide adequate notice to Farmer Bros. of [the plaintiff's] discriminatory layoff claims, but also in order to evaluate (or even to understand) [the plaintiff's] theory of the case, it was *necessary* for the EEOC to investigate the circumstances of [his] layoff.") (emphasis in original); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1101 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (noting that "[t]he allegations made by Plaintiff in her pre-complaint questionnaire certainly provide additional detail to the allegations of harassment of which the [state agency] was on notice.").

As to FEHA, as discussed above, since Chew's administrative charges make no allegation that the City discriminated against him based on his race or his association with another employee based on race, or any claim of race discrimination whatsoever, or that the City failed to prevent discrimination, these claims are also barred. *See Beale v. GTE Cal.*, 999 F. Supp. 1312, 1319 (C.D. Cal. 1996), *aff'd sub nom. Beale v. GTE-California*, 141 F.3d 1173 (9th Cir. 1998) ("Because the case law does not support Plaintiffs' argument that race and national origin discrimination claims are 'like or reasonably related to' age or sex discrimination claims, the Court finds that they have failed to exhaust the administrative remedies available for their race and

14

national origin discrimination claims."); *Wilson v. United Airlines, Inc.*, 1998 WL 754602, at *2 (N.D. Cal. Oct. 23, 1998) ("The Court finds that plaintiff's disability claims are not 'reasonably related to' her initial charge of sex and race discrimination, and, consequently, plaintiff is barred from pursuing her disability claims in this action.").

Chew argues he filed his charges as a layperson and "did not understand the possible ramification of not checking the appropriate box on the form."  Opp'n at 6.  He requests the Court construe his claims liberally, noting the retaliation claim "involves his attempts to help one of his Black colleagues at work," and "[n]othing could be more indicative of an association discrimination claim."  *Id.* at 7.  In support of this contention, he cites *Love v. Pullman*, 404 U.S. 522, 527 (1972), wherein the Court emphasized the need to accommodate "laymen, unassisted by trained lawyers."  Chew also points to case law stating that EEOC charges should be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading."  Opp'n at 6-7 (citing *Kaplan v. Int'l All. of Theatrical Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)).

While it is true that courts must "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved."  *Freeman*, 291 F.3d at 636 (internal quotations and citation omitted).  "The rule of liberal construction does not suggest that a plaintiff sufficiently exhausts his administrative remedies under Title VII by merely mentioning the word 'discrimination' in his or her EEOC charge."  *Id.* at 637.  Even taking into account the requisite liberality, courts have found that "[a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."  *B.K.B.*, 276 F.3d at 1100 (internal citations omitted).

Despite Chew's cursory reference to "discrimination and/or retaliation" in his charge, a review of the actual charge demonstrates that the allegations contained therein were not "like or reasonably related" to the claims in his present Complaint.  In short, because Chew's EEOC/DFEH charge of discrimination did not include allegations of race discrimination,

associational discrimination, or failure to prevent discrimination, none of these allegations can support a theory of liability against the City.  *See Rodriguez*, 265 F.3d at 897 (holding that, under California law, construction of employee's original race discrimination DFEH charge against his employer to include a claim of disability discrimination was not warranted, where the difference between the charge and the claim was an entirely new basis for alleged discrimination).  Thus, because Chew failed to exhaust his administrative remedies, the Court GRANTS the City's Motion as to Chew's Title VII and FEHA claims.

**B.     42 U.S.C. § 1981**

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  *Id.* § 1981(b).  The statute forbids all racial discrimination in the making of both public and private contracts.  *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citation omitted).  It also prohibits "racial discrimination in taking retaliatory action."  *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (citation omitted).

The City argues Chew's § 1981 claims fail because: (1) he has no contract of employment with the City, as public employment is held by statute, not contract; (2) Chew's associational discrimination claim fails as a matter of law because (a) the conduct he identifies  does not constitute cognizable adverse employment actions, (b) he cannot show he was performing competently in the position he held, and (c) he cannot show a causal link between his association with Collins and the adverse employment actions; (3) Chew fails to present evidence to support a prima facie claim of retaliation; and (4) even if Chew could present evidence to survive summary judgment on either claim, the City is not liable under § 1981 for the conduct of its employees because they are not final policymakers with respect to the conduct at issue.  Mot. at 10-22.

As an initial matter, the City's contention that Chew's § 1981 claim fails because public employment is a matter of statute, not contract, is unavailing.  The City relies on *Judie v.*

United States District Court
Northern District of California

1    *Hamilton*, 872 F.2d 919, 922 (9th Cir. 1989), where the Ninth Circuit explained that a plaintiff

2    "can recover under section 1981 only if the terms detailed in his job description create contractual

3    rights or constitute laws."  However, other courts in this District have already rejected the City's

4    argument that public employment is determined by statute, not contract.  *See Lukovsky v. City &*

5    *Cty. of S.F.*, 2006 WL 436142, at *4 (N.D. Cal. Feb. 21, 2006), *aff'd on other grounds in* 535 F.3d

6    1044 (9th Cir. 2008) (rejecting argument that public employment is a relationship determined by

7    statute, not contract, reasoning that such a position would effectively preclude all public

8    employees in California from asserting § 1981 claims); *see also Hofmann v. City & Cty. of S.F.*,

9    870 F. Supp. 2d. 799 (N.D. Cal. 2012); *Nnachi v. City & Cty. of S.F.*, 2014 WL 4088149, at *5

10   (N.D. Cal. Aug. 19, 2014).  The Ninth Circuit has reasoned that even though California law

11   provides that public employment is not held by contract but by statute, this does not preclude a

12   public employee from asserting a § 1981 claim, as the application of such state law to bar liability

13   under § 1981 would be inconsistent with federal law.  *Ramirez v. Kroonen*, 44 F. App'x 212, 218

14   (9th Cir. 2002).  Accordingly, the Court considers the merits of Chew's claims.

15          1.    <u>Associational Discrimination</u>

16          In his claim for associational discrimination under § 1981, Chew alleges "it is beyond cavil

17   that Plaintiff attempted to make sure that Mr. Collins, a Black man, would be successful in his

18   occupation as a chef with [LHH]," and the City violated his rights by depriving him of the benefits

19   of his employment contract based on his association with Collins.  Compl. ¶¶ 71-74.  The City

20   argues Chew cannot establish a claim for discrimination because "he cannot show that he was

21   qualified or performing competently in the position he held, many of the incidents of

22   discriminatory conduct that he alleges are not adverse employment actions, and for those that are,

23   he cannot show a link between his association with Collins and the adverse employment action."

24   Mot. at 11.

25          Section 1981 forbids discrimination on the basis of association with or advocacy for a

26   protected party.  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009) (citation omitted).

27   When analyzing employment discrimination claims under § 1981, a district court is guided by

28   Title VII analysis.  *Surrell*, 518 F.3d at 1103; *Manatt*, 339 F.3d at 799 (federal courts apply the

same standards in § 1981 actions as they do in Title VII race discrimination cases).  "Title VII protects individuals who, though not members of a protected class, are victims of discriminatory animus toward [protected] third persons with whom the individuals associate."  *Barrett*, 556 F.3 at 512 (citation and internal quotation omitted).  The degree of association is irrelevant; rather, "the key inquiries should be whether the employee has been discriminated against and whether that discrimination was 'because of' the employee's race."  *Drake v. 3M*, 134 F.3d 878, 884 (7th Cir. 1998) (holding that a white employee may sue under Title VII for discrimination against him resulting from his friendship with black co-workers); *see also Barrett*, 556 F.3 at 513 ("If a plaintiff shows that 1) she was discriminated against at work 2) because she associated with members of a protected class, then the degree of the association is irrelevant.").

In responding to a motion for summary judgment on claims under Title VII, a plaintiff may proceed by using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or by "simply produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer."  *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).  Under the *McDonnell Douglas* analysis, a plaintiff must first establish a prima facie case of employment discrimination.  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).  If he does, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision.  *Id.*; *Surrell*, 518 F.3d at 1106.  Once that burden is met, the inference of discrimination or retaliation raised by the prima facie case is dispelled.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).  The plaintiff must then provide evidence showing the asserted reason was a pretext for unlawful discrimination or retaliation.  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 146-50 (2000).  At all times, the plaintiff bears the "ultimate burden" of persuasion.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

> a.     *Prima Facie Case*

In general, a plaintiff establishes a prima facie case by showing he is a member of a protected class; that he was qualified for his position and performing his job satisfactorily; that he experienced an adverse employment action; and that "similarly situated individuals outside [his]

protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). The plaintiff's association with a protected class can satisfy the first prong of the analysis. *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) ("where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's own race."); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998), *vacated in part on other grounds by Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999) ("Title VII prohibits discrimination in employment premised on an interracial relationship."); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999) (holding Title VII applicable to allegation that employee suffered discrimination because he had a biracial daughter); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race.").

Viewing the evidence in favor of Chew, the Court finds he can establish a prima facie case. The City does not dispute that Chew associated with Collins. Mot. at 11. Chew described his relationship with Collins as colleagues who help each other out at work, including helping Collins with the e-mail and computer system. Chew Dep. 66:24-68:9; Chew Decl. ¶¶ 11, 40-42, 63. Collins testified Chew "advocated for him" in that they collaborated very closely with work matters, and Chew would be there for him if he felt Collins was being treated unfairly at work. Collins Dep. 25:20-26:8; 26:9-27:5. The record also reflects Koneffklatt knew of this association, as he told Chew he should not spend his time helping Collins. Chew Dep. 36:8-37:13, 41:5-16; Koneffklatt Dep. 30:25-31:10.

Further, Chew notes he is still employed in the position and is not currently under any developmental plan. Opp'n at 9. He completed his probationary period in 2000, and with the exception of his first evaluation in 1999, he has never received an overall evaluation below "Competent and Effective." Chew Decl. ¶¶ 4, 78.

19

1   Chew also alleges several adverse employment actions.  While it is not clear that all rise to

2   the level of an actionable adverse employment action, courts define "adverse action" broadly,

3   finding that "a wide array of disadvantageous changes in the workplace constitute adverse

4   employment actions."  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (compiling cases

5   demonstrating that the Ninth Circuit takes an "expansive view of the type of actions that can be

6   considered adverse," including lateral transfers, unfavorable references, and the imposition of a

7   more burdensome work schedule).  The Ninth Circuit has found that an action is cognizable as

8   adverse "if it is reasonably likely to deter employees from engaging in protected activity."  *Id.* at

9   1243.  "A court need not consider 'whether each alleged retaliatory act constitutes an adverse

10   employment action in and of itself,' but instead can consider the alleged adverse actions

11   collectively."  *Leglu v. Cty. of Santa Clara*, 2014 WL 4100599, at *7 (N.D. Cal. Aug. 20, 2014)

12   (quoting *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1055-56 (2005)); *see also Yartzoff v.*

13   *Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (an undeserved employment rating or review, if

14   proven, can constitute an adverse action); *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th

15   Cir. 2000) (issuance of an undeserved negative performance review can constitute an adverse

16   employment action).  Considering the alleged adverse actions collectively—including Chew's

17   negative performance evaluations, suspensions, and development plan—the Court finds Chew's

18   evidence sufficient for purposes of establishing a prima facie case.

19   Finally, Chew has presented no evidence that similarly situated employees were treated

20   more fairly.  Accordingly, Chew has established a prima facie case.

21         b.     *The City's Nondiscriminatory Reasons*

22   Because Chew established a prima facie case for his claim, the burden of production shifts

23   to Davis to articulate a nondiscriminatory reason for each adverse employment action.  *Burdine*,

24   509 U.S. at 506-07; *McDonnell Douglas*, 411 U.S. at 802.  The City offers several legitimate

25   reasons.  As set forth more fully above, Chew's employment record shows he has had difficulties

26   in certain aspects of the supervisory aspect of his job, in particular with regard to scheduling and

27   communication with his subordinates.  Based on these issues, Lai placed Chew on a

28   Developmental Plan and later suspended him for failing to meet the stated goals in the Plan.  Other

than this suspension, Chew has also been disciplined for failure to comply with infection and quality control standards at LHH, yelling at and being disrespectful toward one of his subordinates, and suspended for eight days for failing to report a substandard item found twice in the resident meals, dishonesty regarding his failure to report the item, and for pressuring a subordinate to make a statement on his behalf regarding the discipline.  By offering these explanations, the City has articulated legitimate, nondiscriminatory reasons for its actions.

c.      *Pretext*

Next, *McDonnell Douglas* requires Chew in turn to raise a genuine factual question whether, viewing the evidence in the light most favorable to him, the City's reasons for its actions are pretextual.  A plaintiff may defeat summary judgment by offering direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer," or "that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable." *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (quotation and citation omitted).  That is, Chew must offer evidence that the City's stated reasons for the adverse actions were untrue or pretextual, or evidence that the City acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the City engaged in intentional discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

Direct evidence includes "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  By contrast, circumstantial evidence is evidence "that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222.  "These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper." *Anthoine*, 605 F.3d at 753 (quotation and citation omitted).

Chew does not directly address the City's proffered reasons, instead arguing that "he and Chef Collins had a work relationship based on over four years of working together and undergoing comparable attacks on them by their supervisors," and this "is clearly enough to show that an

interracial working relation is behind certain discriminatory behaviors."  Opp'n at 9.  However, "[a] plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).  "When the evidence on which a plaintiff relies is circumstantial, that evidence must be specific and substantial to defeat the employer's motion for summary judgment."  *Anthoine*, 605 F.3d at 753 (quotation and citations omitted).

With this in mind, the Court finds summary judgment appropriate.  First, Chew provides no direct evidence of discrimination.  He cites to no explicitly racist or discriminatory actions by the City or his supervisors against him, and cites no direct evidence supporting his claim that any of the adverse actions were tied to his association with an African-American colleague.  Second, Chew fails to raise specific facts demonstrating that circumstantial evidence could support his argument that the City's nondiscriminatory reasons were a pretext for discrimination.  His subjective belief (as reflected in his declaration) that the City discriminated against him is unpersuasive and insufficient to defeat the City's Motion.  And the fact that Chew personally does not believe the asserted reasons why he was disciplined is not sufficient to transform those reasons into a pretext for discrimination.  *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (concluding, despite the plaintiff's claims that she had performed her job well, that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact").

Chew also attempts to undercut the City's legitimate reasons by submitting declarations of several of his subordinates who state that he is a good supervisor who communicates well and can regularly be found on the trayline.  *See* Declarations of Jamila Hill, Misty Partin, Nora Zablan, Felix Ramirez, Carlos Narvaes, Savitree Satram, and Yan Situ, Dkt. Nos. 72-(5-11).  However, these declarations do not contradict the City's evidence that it received complaints regarding Chew, or that his supervisors themselves observed deficiencies.  The fact that these Food Service Workers may not agree with the managers' reasons for the conduct toward Chew does not create pretext.  A party's subjective belief that the challenged conduct was unwarranted, or unnecessary,

cannot create a genuine issue of material fact. *See Cornwell*, 439 F.3d at 1028 n.6; *Bradley*, 104 F.3d at 270.

Accordingly, because Chew has failed to meet his burden to establish that a discriminatory reason more likely motivated the City, or that its proffered explanation is unworthy of credence, the Court GRANTS the City's Motion as to Chew's § 1981 associational discrimination claim.

2.     Retaliation

In his claim for retaliation under § 1981, Chew alleges "it is beyond cavil that Plaintiff attempted to make sure that Mr. Collins, a Black man, would be successful in his occupation as a chef with [LHH]," and, based on these actions, the City "violated Plaintiff's rights by depriving Plaintiff of his right to enjoyment of all benefits, privileges, terms and conditions of his employment contract 'as is enjoyed by White citizens.'" Compl. ¶¶ 71-73.

The City argues the conduct Chew claims was retaliatory is not protected activity.  Mot. at 15.  It further argues "most" of the personnel actions at the heart of his retaliation claims are not adverse employment actions and, even if they were, Chew cannot show a causal link between any protected activity and an adverse employment action. *Id.* at 16-17.  Finally, the City argues it had legitimate nondiscriminatory reasons for all adverse employment actions. *Id.* at 18.

Chew contends "an employee's formal or informal complaint regarding unlawful employment practices is 'protected activity,' and a plaintiff need only show that the belief that an unlawful employment practice occurred was 'reasonable.'" Opp'n at 9.  He maintains he engaged in a protected activity "in that he was helping a racial minority carry out his assigned tasks, where it seemed clear to both of them that the behavior doled out to Chef Collins was certainly racially discriminatory." *Id.* Chew further argues there is a causal link based on the temporal proximity between when Koneffklatt instructed Chew to stop helping Collins write emails and stop being at Collins' computer, and the subsequent retaliatory actions. *Id.* at 10.

Section 1981 does not include an express retaliation provision, but federal courts have found it encompasses retaliation claims. *See, e.g.*, *Manatt*, 339 F.3d at 795.  Such claims are analyzed under the framework of a claim for retaliation under Title VII. *Id.* at 801.  That is, a plaintiff alleging retaliation under § 1981 may either proceed by producing direct or circumstantial

23

evidence showing that a discriminatory reason more likely than not motivated the employer, or may apply the *McDonnell Douglas* burden-shifting framework. *Surrell*, 518 F.3d at 1105; *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088-89 (9th Cir. 2008).

Under the *McDonnell Douglas* analysis, to make out a prima facie case of retaliation, an employee must show he engaged in a protected activity, his employer subjected him to an adverse employment action, and a causal link exists between the protected activity and the adverse action. *Ray*, 217 F.3d at 1240. Once the prima facie case is established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show the stated reasons were a pretext for retaliation. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001).

As noted above, Chew claims he engaged in protected activity by: helping Collins with his emails; filing an internal violence in the workplace complaint against Koneffklatt; and notifying management that Koneffklatt had asked him to stop helping Collins with his emails, which he refused to do. An internal complaint suffices as protected activity. *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1067 (N.D. Cal. 2011). However, Chew did not complain of race discrimination or harassment based on his association with Collins; instead, he complained Koneffklatt "humiliated" him by yelling at him for not "doing his job," and handing him a "write-up" in front of other staff members. Chew Dep., Ex. 4; Super Decl. ¶ 12 and Ex. K. "'[T]he employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.'" *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1280 (S.D. Fla. 2009), *aff'd*, 383 F. App'x 915 (11th Cir. 2010) (quoting *Webb v. R & B Holding Co., Inc.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)).

As discussed above, Chew never filed a formal written complaint with regard to any alleged discrimination or retaliation based on his association with Collins, and he never characterized Koneffklatt's conduct as related to associational discrimination. Chew's complaint that Koneffklatt yelled at him and humiliated him by handing him a write-up in front of other staff is not sufficient to put the City on notice that Chew believed he faced discrimination based on his

United States District Court
Northern District of California

1  association with Collins.  *See Murphy*, 616 F. Supp. 2d at 1281 (plaintiff's complaints that

2  supervisor "used inappropriate, vulgar, and bullying language and that he would often yell and

3  scream . . . were not sufficient to notify her employer that she believed [he] was sexually harassing

4  her and thus, these complaints do not constitute protected activity."); *Powell v. Harsco Metal*,

5  2013 WL 3242759, at *6 (N.D. Ala. June 20, 2013) (finding retaliation claim failed where it was

6  "not clear whether the plaintiff complained merely about the altercation, or was specific about the

7  words used by [his co-worker], or even alleged that he felt that this was discrimination."); *Cordero*

8  *v. Florida*, 2007 WL 2972988, at *5 (N.D. Fla. Oct. 9, 2007) (finding that plaintiff's general

9  complaints were not sufficient to put his employer on notice that he believed his supervisor was

10  discriminating against him due to his disability); *EEOC v. Shoney's, Inc.*, 536 F. Supp. 875, 877

11  (N.D. Ala. 1982) (male employee's "very generalized complaints . . . that he was not being treated

12  fairly in that other managers could date waitresses who worked at the restaurant" did not put

13  defendant "on notice that he was protesting an illegal employment practice.").  Chew's complaints

14  merely establish that Koneffklatt yelled at him and used profane language, but they do not indicate

15  Chew believed he was discriminated against based on his association with Collins, or that he

16  informed the City of such.  These facts demonstrate Chew engaged in activity to protest *unfair*

17  employment practices, not *discriminatory* practices.  *See Lee v. Potter*, 2008 WL 4449568, at *7

18  (N.D. Cal. Oct. 1, 2008), *aff'd*, 358 F. App'x 966 (9th Cir. 2009) (no protected activity where

19  plaintiff complained of general management style).  Thus, these complaints were not protected

20  activity, and Plaintiff cannot demonstrate a prima facie case for retaliation.

21          Further, to the extent Chew alleges that any of this conduct was retaliation for his

22  DFEH/EEOC charges, as discussed above, nowhere in his charges did Chew allege discrimination

23  based on his race, or association with another employee based on their race.  In fact, he does not

24  even mention Collins, Collins' race, or Chew's own race.  Even if Chew engaged in a protected

25  activity by filing his DFEH/EEOC charges, it is undisputed that neither Koneffklatt, Lai, or Dutton

26  knew about the DFEH/EEOC Complaint until they were told about it in connection with this

27  lawsuit.  Koneffklatt Dep. 10:6-15; Koneffklatt Decl. ¶ 4; Lai Dep. 16:5-8; Lai Decl. ¶ 22; Dutton

28  Dep. 15:4-10; Dutton Decl. ¶ 5.  The Ninth Circuit has held that employment decisions made

1   when the decision-maker did not know that the affected employee had engaged in protected

2   activity cannot be causally linked to such activity.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793,

3   796-97 (9th Cir. 1982).

4          Finally, as discussed above, for the same reasons Chew fails to rebut the City's legitimate

5   non-discriminatory reasons for the adverse employment actions, he similarly fails to provide any

6   substantial or specific evidence of pretext to rebut the City's evidence as to this claim.

7   Accordingly, because Chew has failed to establish a prima facie case for retaliation, the Court

8   GRANTS the City's Motion as to Chew's § 1981 retaliation claim.

9          3.   <u>Whether the City is Liable for the Conduct of its Employees</u>

10          The City argues that even if Chew were able to present evidence to survive summary

11   judgment on his discrimination and retaliation claims, it is not liable on Chew's § 1981 claims

12   because he cannot prove that any of the conduct at issue is attributable to the City under *Monell v.*

13   *Department of Social Services*, 436 U.S. 658 (1978).  In *Monell*, the Court stated that "the

14   touchstone of the § 1983 action against a government body is an allegation that official policy is

15   responsible for a deprivation of rights protected by the Constitution."  *Id.* at 690.  Where there is

16   no official policy, a municipality's custom or practice also can give rise to municipal liability

17   where they are "so permanent and well settled as to constitute a custom or usage with the force of

18   law."  *Id.* at 691 (internal quotations omitted); *see also Connick v. Thompson*, 131 S. Ct. 1350,

19   1359 (2011).  *Monell* is not an affirmative defense; rather, municipal liability is an element of the

20   plaintiff's cause of action.  Accordingly, the burden always remains on the plaintiff to demonstrate

21   that a constitutional tort was committed by an employee acting pursuant to an expressly adopted

22   official policy, long standing practice, or by an employee acting as a "final policymaker."  *Delia*

23   *v. City of Rialto*, 621 F.3d 1069, 1073 (9th Cir. 2010), *as amended on denial of reh'g* (Nov. 8,

24   2010), *rev'd on other grounds by Filarsky v. Delia*, 132 S. Ct. 1657 (2012); *see also Plumeau v.*

25   *Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  And because of the strong

26   policy against imposing respondeat superior liability on cities, "the plaintiff bears a heavy burden

27   in proving municipal liability."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir.

28   2005).

United States District Court
Northern District of California

1    As an initial matter, the City cannot be held liable because, as discussed above, Chew has

2    failed to present evidence that any of the alleged conduct was unconstitutional, i.e., either based on

3    an illegal discriminatory or retaliatory motive.  Second, Chew has not pointed to any

4    unconstitutional municipal policy, practice, or custom.  Chew argues the City can be liable under

5    the "Cat's Paw" theory, as stated in *Staub v. Proctor Hospital*, which the Court explains means a

6    plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged

7    with making the ultimate employment decision." Opp'n at 11 (citing *Staub*, 562 U.S. 411, 415 &

8    n.1, 420-22 (2011) (holding that employers are liable where "a supervisor performs an act with

9    discriminatory animus that is intended . . . to cause an adverse employment action, and if that act

10   is a proximate cause of the ultimate employment action").[1]  However, "the law is clear that a

11   municipality cannot be held liable for the actions of its employees under § 1983 based on a theory

12   of respondeat superior."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001)

13   (citing *Monell*, 436 U.S. at 663).  The Court's holding in *Staub* made clear that its applicability,

14   when a supervisor acts outside the scope of his employment, was premised on "traditional agency

15   principles," which include the theory of respondeat superior.  *Staub*, 131 S. Ct. at 1194 n.4.

16   Therefore, Chew cannot rely on the Cat's Paw theory as elucidated in *Staub* to impute liability to

17   the City and circumvent the requirements of *Monell*.  *See Manuele v. City of Jennings*, 2012 WL

18   113538 (E.D. Mo. Jan. 13, 2012) (holding that *Staub* does not apply to claim against municipality

19   under § 1983 because under *Monell* municipalities are not subject to liability under agency

20   principles).

21   In sum, even if Chew could establish a prima facie case of retaliation, he fails to bring

22   forth any evidence that his injuries resulted from an unconstitutional municipal policy, practice or

23

24   [1] The name of the cat's paw theory "is based on an old fable in which a scheming monkey
     convinces an unwitting cat to fetch roasting chestnuts from a fire. The cat burns its paw and the
25   monkey gets the chestnuts."  *Tomada v. Home Depot U.S.A., Inc.*, 2014 WL 2538792, at *12
     (N.D. Cal. June 3, 2014) (quotation omitted).  "In employment discrimination cases, the 'cat's
26   paw' is the unwitting manager or supervisor who is persuaded to act based on another's illegal
     bias." *Id.* (quotation omitted).  "An example would be where an immediate supervisor is biased
27   and influences the upper level manager, who has firing authority, who pro forma approves the
     recommendation for termination." *Id.*  (quotation omitted).

28

custom, or that a final policy maker was responsible for any of the alleged illegal actions. Summary judgment on Chew's § 1981 claims is appropriate.  Accordingly, the Court GRANTS the City's Motion as to Chew's § 1981 claims.

**CONCLUSION**

Based on the analysis above, the Court hereby **GRANTS** the City's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: February 17, 2016

_____

MARIA-ELENA JAMES
United States Magistrate Judge